SLIP OPINION

Cite as 2016 Ark. App. 500

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–805

| | |
|---|---|
| RONNIE MCCORD, CLINT MCCORD, MCCORD FARMS, LLC, AND DITCH 56 FARMS, LLC<br><br>APPELLANTS | **Opinion Delivered:** October 26, 2016<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, EASTERN DISTRICT<br>[NO. 16LCV–2012–0001] |
| V. | |
| STANLEY FOSTER, JUDY FOSTER, LINDA ALDEN, AND DANNY BRANDON<br><br>APPELLEES | HONORABLE LEE FERGUS, JUDGE<br><br>REVERSED AND REMANDED |

## RITA W. GRUBER, Judge

This case involves two separate appeals concerning the Craighead County Circuit Court's granting of summary judgment in favor of appellees Judy and Stanley Foster that ordered the specific performance of a contract where the Fosters were to purchase certain real property from appellees Linda Alden and Danny Brandon.[1] Ronnie McCord, Clint McCord, and McCord Farms, LLC (collectively, the McCord defendants), appeal because they had the property under lease and the circuit court's grant of summary judgment extinguished their right of prior refusal to purchase the land. Ditch 56 Farms, LLC, appeals from the circuit court's denial of its motion to intervene because it had a contract to purchase the property

---

[1]We dismissed an earlier appeal for lack of a final order. *Ditch 56 Farms, LLC v. Foster*, 2013 Ark. App. 505.

from the McCord defendants. We reverse the summary judgment and the denial of the motion to intervene and remand for further proceedings in conformity with this opinion.

*Background*

In June 2008, Sylvester Brandon leased 160 acres of farmland to Ronnie and Clint McCord for ten years. The lease provided that it was to be binding on the parties and their heirs, personal representatives, and assigns. The McCords could not assign or sublease any part of the premises without Brandon's prior written approval. If Brandon were to sell the property, it was to be subject to the lease. The lease also included a provision for a right of first refusal for Sylvester's children, Linda Alden and Danny Brandon, if Sylvester decided to sell the property during the term of the lease. If neither Alden nor Danny Brandon wanted to buy the property, a right of second refusal was given to the McCords.

Sylvester Brandon died in April 2010, having never offered to sell the land. His will left one tract of eighty acres to Brandon and another eighty acres to Alden, and his estate executed distribution deeds to them. The McCords continued to farm the land in accordance with their lease.

In November 2011, the Fosters contracted to purchase all 160 acres from Danny Brandon for $528,000. Alden did not sign the contract but both Brandon and Alden cashed earnest-money checks from the Fosters. Three weeks later, Brandon and Alden signed separate but similar contracts honoring the McCords' right of refusal at the same price as offered by the Fosters. The next day, the McCords executed an offer and sale contract

whereby they would convey the property to Ditch 56 Farms for the same price offered by the Fosters.[2]

The Fosters filed suit seeking a preliminary injunction and specific performance of the sales contract or, in the alternative, damages for breach of contract against Brandon and Alden. The Fosters sought declaratory relief as to the validity of Ronnie and Clint McCord's right of refusal and their contract to purchase the property from Brandon and Alden.[3]

The circuit court granted the Fosters' request for an ex parte temporary restraining order. The McCord defendants, Brandon, and Alden were enjoined and restrained from closing the sale for the purchase of the property until further orders of the court. The parties later entered into a consent injunction whereby all parties were restrained from closing on the sale of the property until the court finally determined the matter.

Brandon and Alden responded that the complaint should be dismissed and pled unclean hands and estoppel to all claims. The McCords answered, denying the material allegations of the complaint. Their answer also included a counterclaim against the Fosters and a cross-claim against Brandon and Alden for intentional interference with a contractual relationship.

Ditch 56 Farms filed a motion to intervene, and its proposed complaint sought declaratory judgment, specific performance, and breach of contract and damages against Alden, Brandon, and the McCord defendants.

---

[2]The circuit court would later find that Ditch 56 Farms had entered into a contract on December 14, 2011, where it would sell the property to another party.

[3]The Fosters amended their complaint twice; however, the amendments are not germane to this appeal.

The Fosters moved for summary judgment, asserting that Alden and Brandon had breached the sales contract and requesting that they be granted judgment against Brandon and Alden. They also sought a declaration that the McCords' contract to purchase the property was unenforceable. In an accompanying brief, the Fosters argued that the McCords' right of refusal was never triggered because the decedent never offered the property for sale, which, according to the Fosters, was a condition precedent for the right of refusal for the McCord defendants.

After hearing arguments on the motion, the court granted summary judgment to the Fosters and ordered Brandon and Alden to specifically perform their contract with the Fosters. The court found that the decedent had never offered the property for sale during his lifetime and that the right of refusal held by Brandon and Alden merged into the fee title and was extinguished when they inherited the property from their father. It also held that the conveyance to the Fosters would be subject to the remaining terms of the McCords' lease, with the exception of the right of refusal provision. Because of the manner in which Brandon and Alden acquired the property (i.e., inheritance), the court concluded that the McCords' secondary right of refusal was never triggered. As a result, the court determined that Ditch 56 Farms' intervention motion was moot. The court ended its order by stating "all issues between the parties are disposed by this Order, and the case will be removed from the docket."[4]

_____

[4]The circuit court later awarded the Fosters attorney's fees and costs against Brandon and Alden. That award is not at issue on appeal.

SLIP OPINION

After both the McCords and Ditch 56 Farms filed their notices of appeal, the McCord defendants also filed a motion seeking a stay of the judgment until the appeal could be heard. The court denied the motion to reconsider. It also refused to consider granting a stay until the McCords posted a bond in the amount of $574,700.32.

We dismissed appeals by the McCords and Ditch 56 Farms without prejudice because the order they appealed from was not final. *Ditch 56 Farms*, *supra*. Specifically, we held that the summary judgment did not decide the McCords' counterclaim for damages against the Fosters or their cross-claim for damages against Alden and Brandon. We also found that Ditch 56 Farms' motion to interevene was neither denied nor dismissed but found moot because of the summary judgment granted to the Fosters and never expressly disposed of.

On remand, the Fosters filed a motion to clarify the order granting summary judgment and to determine whether the McCords' counterclaim or cross-claims remained viable after the grant of summary judgment based on our statement in *Ditch 56 Farms*, *supra*, that those claims had not been expressly disposed of. The McCords responded, arguing that their claims remained viable.

The court entered an order dismissing with prejudice any remaining cross-claims or counterclaims brought by the McCords, and denying Ditch 56 Farms' motion to intervene. The McCords and Ditch 56 Farms now appeal.

*The McCords' Appeal*

Although the McCords argue four points, the dispositive point is the circuit court's interpretation of the McCord defendants' separate right of refusal under the lease. At issue are the following provisions:

5

9. Successors and Assigns. This Agreement shall be binding on the parties, their heirs, personal representatives or assigns.

. . . .

19. Right of First and Second Right of Refusal. During the term of this Agreement, LINDA ALDEN and DANNY BRANDON shall have the right of first refusal to purchase the Premises. In the event neither Ms. Alden nor Mr. Brandon desire to purchase the Premises, MCCORD shall have a right of second refusal to purchase the Premises on the same terms offered by or to any third party. BRANDON will deliver written notice of any such proposed sale to MCCORD. MCCORD will have thirty (30) days from the receipt of the notice to notify BRANDON, in writing, of their willingness to purchase the Premises on those terms. If MCCORD decides not to so purchase or fails to responds within the thirty (30) day period, BRANDON is entitled to proceed with the third party sale.

In general terms, a "right of first refusal" is the generic label commonly used to describe a contractual right to preempt another. 3 *Arthur L. Corbin, Corbin on Contracts* § 11.3, at 469 (Joseph M. Perillo ed., rev. ed. West 1996). The conventional right of first refusal "is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it." *Id*. at 470. At that point, the right of first refusal "ripens" into an option, and the preemptive right holder may exercise his preemptive right to create a contract based on the same terms that the owner is willing to accept from the third party. *See id*. at 470–71. A right of first refusal is distinguished from an absolute option in that the former does not entitle the lessee to compel an unwilling owner to sell. Instead, it requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the right of first refusal. *Estate of Johnson v. Carr*, 288 Ark. 461, 706 S.W.2d 388 (1986) (*Carr II*).

Also, generally, the death of the owner prior to any sale extinguishes any preemptive right. *Mercer v. Lemmens*, 40 Cal. Rptr. 803 (Cal. App. 1964); *Bloomer v. Phillips*, 562

N.Y.S.2d 840 (N.Y. App. Div. 1990). This is but a corollary to the prevailing rule that rights

of first refusal are not assignable unless the instrument indicates otherwise:

> [R]ights of first refusal are presumed to be personal and are not ordinarily construed as transferable or assignable unless the particular clause granting the right refers to successors or assigns or the instrument otherwise clearly shows that the right was intended to be transferable or assignable.

*Park Station Ltd. P'ship, LLLP v. Bosse*, 835 A.2d 646, 655 (Md. 2003) (citing other

jurisdictions); *accord Masterson v. Sine*, 436 P.2d 561, 566 (Cal. 1968); *Ryan v. Lawyers Title Ins.*

*Corp.*, 959 N.E.2d 870, 876 (Ind. App. 2011); *Dahl v Zabriskie*, 88 N.W.2d 66, 67 (Iowa

1958); *Jones v. Stahr*, 746 N.W.2d 394, 399 (Neb. App. 2008); *Sweeney v. Lilly*, 479 S.E.2d

863, 866 (W. Va. 1996); *Corbin, Corbin on Contracts* § 11.15, at 587; Jonathan F. Mitchell, *Can*

*a Right of First Refusal be Assigned?* 68 U. Chi. L. Rev. 985, 993 ( 2001). However, the lease

in the present case may indicate otherwise by the inclusion of Paragraph 9.

We apply the well–established law of contract interpretation. The court's duty is to

construe the meaning of the writing in accordance with the plain language employed. *Po-Boy*

*Land Co. v. Mullins*, 2011 Ark. App. 381, 384 S.W.3d 555. When a contract is free of

ambiguity, its construction and legal effect are questions of law for the court to determine. *Id*.

But, if there is doubt or uncertainty as to the meaning of the writing and it is fairly susceptible

to more than one equally reasonable interpretation, it is ambiguous. *Id*. The meaning of an

ambiguous writing is a question of fact, and the fact-finder may use parol evidence to aid in

interpreting the writing. *Id*.; *see also First Nat'l Bank v. Griffin*, 310 Ark. 164, 832 S.W.2d 816

(1992).

In the case at bar, our object is to ascertain the intention of the parties, not from particular words or phrases, but from the entire context of the agreement. *See Byme, Inc. v. Ivy*, 367 Ark. 451, 241 S.W.3d 229 (2006). It is well settled that a contract should be construed so that all of its parts are in harmony, if that is possible. *Id*. When a contract contains general and specific provisions relating to the same subject, the specific provision controls over more general terms. *Taylor v. Hinkle*, 360 Ark. 121, 200 S.W.3d 387 (2004).

Here, the parties presented the court with more than one equally reasonable interpretation of the lease between Sylvester Brandon and the McCords. The McCords argue that their preemptive right continued even after Brandon and Alden acquired the fee title to the property because Paragraph 9 of the lease made the lease binding on the parties' "heirs, personal representatives or assigns." The Fosters, on the other hand, argue that the McCords' preemptive right of refusal never ripened because the decedent never offered the property for sale during his lifetime. They further argue that the preemptive rights held by Brandon and Alden were extinguished when they inherited the property from their father. However, the Fosters do not discuss the effect of Paragraph 9 on the McCords' right of refusal.

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *White v. Shepard*, 2015 Ark. App. 223, 459 S.W.3d 333. Here, there is clearly a factual dispute as to the intention of the parties regarding the relationship between Paragraphs 9 and 19. In other words, the relevant issue is whether the original parties to the lease intended that Brandon and Alden would be required to offer the property to the McCords in the event that they acquired the property from the decedent and desired to sell during the term of the

McCords' lease. The determination of the intent of contracting parties is largely a factual one. *Perry v. Baptist Health*, 358 Ark. 238, 189 S.W.3d 54 (2004); *Deltic Timber Corp. v. Newland*, 2010 Ark. App. 276, 374 S.W.3d 261. Such factual findings are not within the realm of a summary judgment. *See Lee v. Mansour*, 104 Ark. App. 91, 289 S.W.3d 170 (2008). The purpose of a summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Po-Boy Land Co.*, *supra*.

We therefore reverse the summary judgment and remand for further proceedings in conformity with this opinion.

*Ditch 56 Farms' Appeal*

For its appeal, Ditch 56 Farms argues that the circuit court erred in denying its intervention petition. When the denial of an Ark. R. Civ. P. 24(a)(2) motion to intervene by right is based on a failure by the appellant to meet the requirements of the rule, our review is de novo. *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, 461 S.W.3d 317.

Arkansas Rule of Civil Procedure 24 governs intervention in a civil cause of action and provides for both intervention as a matter of right and permissive intervention. To intervene as a matter of right when there is no statute expressly permitting it, Rule 24(a)(2) requires the applicant to show that (1) he has a recognized interest in the subject matter of the litigation, (2) the interest might be impaired by the disposition of the action, and (3) the interest is not adequately protected by any of the existing parties to the action. *Pearson v. First Nat'l Bank*, 325 Ark. 127, 924 S.W.2d 460 (1996). Thus, if a party meets all three factors under Rule 24(a)(2), intervention as a matter of right cannot be denied. *Bass*, 2015 Ark. 178, at 14, 461

S.W.3d at 326; *see also Schacht v. Garner*, 281 Ark. 45, 46, 661 S.W.2d 361, 362 (1983); *Midland Dev., Inc. v. Pine Truss, Inc.*, 24 Ark. App. 132, 750 S.W.2d 62 (1988).

In the present case, Ditch 56 Farms sought to intervene because it has a contract[5] with the McCord defendants to purchase the property from them once the McCord defendants exercised their preemptive right of refusal. Its proposed complaint sought declaratory judgment, specific performance, and a claim for damages for breach of contract against Alden, Brandon, and the McCord defendants. However, the circuit court did not conduct a Rule 24 analysis. Instead, the court simply denied the motion to intervene as moot once it determined that the McCords' right of refusal had been extinguished. As we hold that the circuit court erred in granting summary judgment to the Fosters on that basis, we reverse the denial of Ditch 56 Farms' motion and remand the case to the circuit court to properly consider the motion to intervene. Generally, such a motion should be considered prior to consideration of the merits of the underlying claims. *See Christian v. McVesting, LLC*, 2014 Ark. App. 509, 443 S.W.3d 578.

Reversed and remanded.

KINARD and VAUGHT, JJ., agree.

*Mixon & Worsham PLC*, by: *Donn Mixon*, for appellants Ronnie McCord, Clint McCord, and McCord Farms, LLC.

*Law Office of Wendell L. Hoskins II*, by: *Wendell L. Hoskins II* and *Mary K. Walker*, for appellant Ditch 56 Farms, LLC.

---

[5]In its brief, Ditch 56 Farms elected to call its contract with the McCords an "assignment." We express no opinion as to the nature and effect of the document.

*Hayes, Alford, Johnson & Conley, PLLC,* by: *Christopher B. Conley*, for appellees Linda Alden and Danny Brandon.

*Waddell, Cole & Jones, PLLC,* by: *Ralph W. Waddell* and *Justin E. Parkey*, for appellees Stanley E. Foster and Judy Foster.