## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Norma Jean (Blevins) Marshall,**
**Defendant Below, Petitioner**

**vs)** **No. 17-0048** (McDowell County 14-C-111)

**Leonard Stiltner and James (Boomy)**
**Stiltner, Plaintiffs Below, Respondents;**
**Mary Johnson Sada and Walter Johnson,**
**Defendants Below, Respondents**

**FILED**

**June 29, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Norma Jean (Blevins) Marshall, pro se, appeals the December 29, 2016, order of the Circuit Court of McDowell County interpreting the last will and testament of Levi Blevins and delineating the boundaries of the various parcels of real estate devised to petitioner and respondents. Respondents Leonard Stiltner and James (Boomy) Stiltner, by counsel William S. Winfrey, II, filed a response. Respondents Mary Johnson Sada and Walter Johnson, pro se, also filed a response.[1]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

The decedent, Levi Blevins, and his sister, Ocie Johnson, jointly owned a 85-acre parcel of land in McDowell County, West Virginia, with the right of survivorship. Consequently, when Ocie Johnson died on April 5, 2008, the decedent became the sole owner of the parcel. Petitioner, Respondent Leonard Stiltner, Mary Johnson Sada, and Walter Johnson are the children of Ocie

---

[1]Respondents Mary Johnson Sada's and Walter Johnson's response consists of a single sentence requesting that the December 29, 2016, order be affirmed. Additionally, all parties agree as to the locations of the hog lot devised to Mary Johnson Sada and the apple orchard devised to Walter Johnson. Therefore, hereinafter, "respondents" will refer only to Respondents Leonard Stiltner and James (Boomy) Stiltner.

Johnson. Respondent James (Boomy) Stiltner is Leonard's son and Ocie's grandson. In his last will and testament, the decedent, Levi Blevins, made the following devises of real estate out of the 85-acre parcel:

> FIFTH: I devise the real property I own situate at Apple Orchard Field unto Walter Johnson.

> SIXTH: I devise the real property known as the hog lot up to the gas well unto Mary Johnson.

> SEVENTH: I devise unto Norma Jean Blevins all of my interest that I may have at the time of my death in the real estate where she now resides.

The parties agree as to the locations of the hog lot devised to Mary Johnson Sada and the apple orchard devised to Walter Johnson. With regard to petitioner's residence, she asserts that she had the use of the entire 85-acre parcel after the decedent allowed her to move onto the land in 2001. Following the decedent's death on February 17, 2013, Respondent Leonard Stiltner, who was appointed executor under the terms of the decedent's will, filed an action in the Circuit Court of McDowell County claiming that, after the specific devises out of the 85-acre parcel, the remainder of the property passed to him and Respondent James (Boomy) Stiltner pursuant to the residuary clause.[2] That clause states that "[a]ll the rest, residue, and remainder of my property, whether real, personal[,] or mixed, of every nature and description and wherever situate, I give, devise[,] and bequeath unto Leonard Stiltner and Boomy Stiltner, in equal shares."

On June 23, 2016, the circuit court held a bench trial to resolve the dispute. At trial, the parties not only relied on the language of the relevant clauses, but also presented extrinsic evidence to show the decedent's intent. For example, petitioner cross-examined Respondent Leonard Stiltner, Respondent James (Boomy) Stiltner, Mary Johnson Sada, and Walter Johnson regarding the amount of time each spent with the decedent prior to his death. During petitioner's testimony, she testified that she was in regular contact with the decedent who told her to "look after that property down there and take care of it." Petitioner further testified that she had the use of the entire 85-acre parcel. However, petitioner admitted that she moved a barn closer to the cleared area where her residence is located "to keep the trouble down." Respondents, Mary Johnson Sada, and Walter Johnson all testified that the decedent restricted petitioner's use of land away from her residence such as instructing petitioner to relocate the barn and/or telling her not to plant a garden other than at her residence. Mary Johnson Sada further testified that petitioner originally located the barn on the hog lot, which was the property that the decedent meant to pass to Mary Johnson Sada. Mary Johnson Sada testified that the hog lot separates the cleared area where petitioner's residence is located from the remainder of the 85-acre parcel.

By order entered December 29, 2016, the circuit court ruled in respondents' favor, finding that the remainder of the 85-acre parcel passed to them pursuant to the residuary clause. The circuit

---

[2]Respondent James (Boomy) Stiltner was a co-plaintiff.

court found that petitioner could not "credibly claim" that, following the specific devises to Mary Johnson Sada and Walter Johnson, the remaining property "below the [h]og [l]ot [belonging to Mary Johnson Sada] is associated with and necessary for the use and enjoyment of her residence" when petitioner's residence lies "north and north east [sic] of the hog lot." The circuit court based this finding on both the language of the decedent's will and the extrinsic evidence presented by the parties, explaining that "a latent ambiguity" existed in the will regarding the property that the decedent intended to convey to petitioner. Accordingly, the circuit court utilized "[t]he ordinary meaning of the words used by the [decedent] and available extrinsic evidence" to ascertain his intent. The circuit court found that, if the will was construed as proposed by petitioner, "she would receive land not contiguous with the real estate upon which her residence is located" given that her residence is separated "from the balance of the 85 acres she is claiming" by the hog lot. Therefore, the circuit concluded that the property devised to petitioner lies between both the hog lot devised to Mary Johnson Sada and the apple orchard devised to Walter Johnson and that, after those three specific devises, respondents owned the remainder of the 85-acre parcel.

Petitioner now appeals the circuit court's December 29, 2016, order that awarded judgment to respondents following the June 23, 2016, bench trial. We apply the standard for reviewing a judgment entered following a bench trial:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).

On appeal, petitioner argues that a less-deferential standard of review applies to this case, stating that the circuit court granted respondents a judgment on the pleadings. Contrary to petitioner's contention, we find that the record clearly shows that the circuit court awarded respondents judgment following a bench trial where the parties presented evidence and testimony.[3] Therefore, we conclude that the standard set forth in syllabus point one of *Public Citizen* governs review of this case. However, we further find that, because the circuit court based its judgment partially on its interpretation of the decedent's will, our review is de novo to that extent. *See Sweeney v. Lilly*, 198 W.Va. 202, 204 n.2, 479 S.E.2d 863, 865 n.2 (1996) (finding that the nature of the interest belonging to a will's beneficiaries constituted a legal question).

Upon our review of the will's language, we concur with the circuit court's finding that there is a latent ambiguity, which can be solved by utilizing "[t]he ordinary meaning of the words

---

[3]In addition to the parties' testimony, respondents introduced four exhibits, including an aerial map of the 85-acre parcel, into evidence.

used by the [decedent] and available extrinsic evidence" to ascertain his intent. "The paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syl. Pt. 2, *Dantzic v. Dantzic*, 222 W.Va. 535, 668 S.E.2d 164 (2008) (quoting Syl. Pt. 1, *Farmers and Merchants Bank v. Farmers and Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975)). In syllabus point three of *Dantzic*, we further held that "[i]n construing a will[,] the intention must be ascertained from the words used by the testator, considered in the light of the language of the entire will and the circumstances surrounding the testator when he [or she] made his [or her] will." 222 W.Va. at 537, 668 S.E.2d at 166 (quoting Syl. Pt. 7, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957)). Accordingly, "extrinsic evidence may be admitted to interpret and apply language actually embodied in a will." *Farmers and Merchants Bank*, 158 W.Va. at 1012, 216 S.E.2d at 770, syl. pt. 4, in part; *Goetz v. Old Nat. Bank of Martinsburg*, 140 W.Va. 422, 430, 84 S.E.2d 759, 766 (1954) (finding that "[w]here a latent ambiguity exists in a testamentary paper, extrinsic evidence may be introduced to show intent."). Finally, in syllabus point nine of *Gilbert v. McCreary*, 87 W.Va. 56, 104 S.E. 273 (1920), we held:

> A devise of a dwelling house,[4] by a description sufficiently definite and certain to afford means of identification thereof, passes title to all of the ground covered by the house *and such additional and adjacent land of the testator as was used in connection with the house, at the date of execution of the will, and is necessary for reasonable use and enjoyment thereof*, in the absence of a clear and unambiguous expression of intention to the contrary.

(Emphasis added.).

Here, the decedent gave petitioner "the real estate where she now resides." The circuit court defined "reside" as having one's permanent home at "a particular place." Oxford English Dictionary 706 (2nd ed. 1989). Accordingly, respondents argue that petitioner was devised only that adjacent property reasonably necessary for the use and enjoyment of her residence. We agree. Respondents, Mary Johnson Sada, and Walter Johnson all testified that the decedent restricted petitioner's use of land away from her residence such as instructing petitioner to relocate a barn and/or telling her not to plant a garden other than at her residence. Petitioner partially corroborated the other parties' testimony by admitting, during direct examination, that she moved the barn closer to the cleared area where her residence is located "to keep the trouble down."[5]

Furthermore, Mary Johnson Sada testified that the hog lot that was devised to her separates

---

[4]As noted by the circuit court, a "dwelling house" is defined as "a residence or abode." Black's Law Dictionary 619 (10th ed. 2014).

[5]Petitioner questions the adequacy of her former attorney's presentation at the bench trial. However, we note that a litigant is only entitled to a fair trial, but not a perfect trial "because such a thing does not exist." *Sprouse v. Clay Commc'n, Inc.*, 158 W.Va. 427, 464, 211 S.E.2d 674, 698 (1975). Upon on our review of the record, we find that petitioner received a fair trial.

4

the cleared area where petitioner's residence is located from the remainder of the 85-acre parcel. Given that testimony, the circuit court was free to find that petitioner could not "credibly claim" that the remaining property "below the [h]og [l]ot [belonging to Mary Johnson Sada] is associated with and necessary for the use and enjoyment of her residence" when petitioner's residence lies "north and north east [sic] of the hog lot." *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (finding that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact"). Therefore, we conclude that the circuit court did not abuse its discretion in awarding judgment to respondents on their claim that, after the specific devises to petitioner, Mary Johnson Sada, and Walter Johnson, the remainder of the 85-acre parcel passed to them pursuant to the will's residuary clause.

For the foregoing reasons, we affirm the circuit court's December 29, 2016, order awarding judgment to respondents following the June 23, 2016, bench trial.

Affirmed.

**ISSUED:**   June 29, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating.